IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SENORA F. GORDON, | ) | No.   06 C 4572 |
| Plaintiff, | ) | |
| | ) | The Honorable William J. Hibbler |
| v. | ) | |
| VILLAGE OF MATTESON, ROBERT CHRISTENSEN and CHRISTINE LEWANDOWSKI, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On August 25, 2005, the defendants arrested Senora Gordon for aggravated assault. The state, however, eventually dismissed all charges against Gordon. Subsequently, Gordon sued the Village of Matteson and the arresting officers for false arrest, excessive force and violation of the Fourteenth Amendment's Equal Protection clause. The defendants now move for summary judgment on all claims. For the reasons set forth below, the defendants' motion for summary judgment regarding Gordon's claim of false arrest and violation of the Fourteenth Amendment is GRANTED. The defendants' motion for summary judgment regarding Gordon's excessive force claim is DENIED.

### I.  Factual Background

The following undisputed facts are from the parties' Local Rule 56 statements.

1

On August 25, 2005, Nikisha MacNeal and Senora Gordon engaged in a verbal altercation regarding MacNeal's children allegedly playing on Gordon's lawn. Later that day, MacNeal called 9-1-1 and claimed that during the altercation, Gordon pulled out a knife from her waist-pack and threatened MacNeal with bodily harm. (Def. 56.1(a) St. ¶ 1.) The Matteson police department sent officers Robert Christensen[1] and Christine Lewandowski to investigate the incident. (Def. 56.1(a) St. ¶ 7.) While canvassing the neighborhood, the Officers spotted Gordon talking to Catherine Robinson in Robinson's driveway. (*Id.*) The Officers exited their vehicle and told Gordon they were investigating an allegation that a woman matching Gordon's description and wearing a waist-pack similar to Gordon's had threatened MacNeal. (Def. 56.1(a) St. ¶ 10.) Officer Christensen asked Gordon to display the contents of her waist-pack; Gordon complied and there was no knife. (Def. 56.1(a) St. ¶¶ 11, 13, 18); (Pl. 56.1(b)(3)(B) St. ¶ 18.) Nevertheless, the Officers handcuffed Gordon and arrested her for aggravated assault. (Def. 56.1(a) St. ¶ 17.) The state eventually dismissed the charges against Gordon.

On July 19, 2007, Gordon filed an Amended Complaint alleging the defendants: (1) wrongfully arrested her; (2) used excessive force during the arrest; and (3) violated her Fourteenth Amendment Equal Protection Rights.[2]

## II. Standard of Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

---

[1] The plaintiff misidentified Officer Christensen as "Christian" in the caption of the complaint.
[2] Gordon's Amended complaint included other allegations which were dismissed by the Court on June 22, 2007.

2

317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. Fed. R. Civ. P. 56(c). Once the moving party has met the initial burden, the nonmoving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The nonmoving party must produce specific facts showing there is a genuine issue of material fact, and the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the nonmoving party. *Id.* at 255.

### III. Analysis

A. *False Arrest*

For Gordon to prevail on her claim of false arrest, she must first show that the police arrested her without probable cause. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) ("An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause."). Probable cause exists where reasonable police officers would believe "in light of the facts and circumstances within their knowledge at the time of the arrest that the suspect had committed or was committing an offense." *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003). The Supreme Court has held that probable cause only requires "a substantial *chance* of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S.Ct 2317, 76 L.Ed.2d 527 (1983) (emphasis added). Thus, an officer can have probable cause even if her belief that a crime was committed is ultimately proven false. *Payne*, 337 F.3d at 766.

3

Gordon argues the police lacked probable cause because the facts known to them during the arrest did not support MacNeal's version of the events. Gordon is 59 years old, had double knee replacement surgery, walks with a cane and suffers from rheumatoid arthritis. Gordon claims these facts would cause a reasonable police officer to believe she did not accost MacNeal. Gordon argues once the police saw her physical limitations, they should have been skeptical about MacNeal's complaint and engaged in further investigation before taking her into custody. In response, the defendants argue MacNeal's 9-1-1 call and her subsequent conversation with the police furnished the arresting officers with probable cause. The Court agrees.

The Seventh Circuit has consistently held that an identification from a "single, credible victim or eyewitness can provide the basis for probable cause." *Woods v. Chicago*, 234, F.3d 979, 996 (7th Cir. 2000); *Tangwell v. Stuckey*, 135 F.3d 510, 520 (7th Cir. 1998) (holding that the victim's identification of the plaintiff as her attacker gave the police probable cause, even though the plaintiff was eventually cleared of all wrong doing.). For example, in *Woods v. Chicago*, Woods was arrested after the alleged victim told the police Woods threatened him with a metal pipe. *Woods*, 234 F.3d at 983. The police eventually dropped the charges, and Woods sued the police, claiming he was arrested without probable cause. *Id.* The essence of the complaint was that the officers arrested Woods before corroborating the victim's claims. *Id.* at 997. For example, the police failed to speak to Woods's co-workers, even though the altercation supposedly occurred while Woods was at work. *Id.* The Seventh Circuit, however, held the police had probable cause based solely on the victim's criminal complaint. *Id.* at 996. Thus, the police were not required to interview potential witnesses before arresting Woods: "police

4

officers have no constitutional obligation to conduct any further investigation before making an arrest if they have received information from a reasonably credible victim or eyewitness to supply probable cause." *Id.* Indeed, even if the police *"relied exclusively* on the [alleged victim's] complaint in making the arrest and had made *no effort* to investigate or corroborate [the alleged victim's] version of the events they would have been justified in making the arrest ..." *Id.* at 997 (emphasis added).

Here, MacNeal called 9-1-1 and told the police that an older, African-American woman wearing a waist-pack threatened her with a knife. The police dispatched Officers Christensen and Lewandowski to MacNeal's home to interview her regarding the appearance of the alleged assailant and the location of the altercation. At the interview, MacNeal repeated her allegations and agreed to file a criminal complaint. Armed with this knowledge, the Officers drove to the scene of the alleged crime and encountered a woman fitting the suspect's description. The Officers questioned Gordon and informed her they were looking for woman matching Gordon's physical description and wearing a waist-pack similar to Gordon's. Gordon contends that once the police saw she walked with a cane and was an older woman, a reasonable officer would have concluded that Gordon could not have threatened MacNeal. This argument is without merit.

Gordon admits that on the morning of her arrest, she had a heated argument with MacNeal. (Gordon Dep. at 78.) Gordon admits that she stood on the street and yelled obscenities at MacNeal. (Gordon Dep. at 78.) It takes no extra physical vigor to hold a knife while yelling obscenities, and it takes no extra strength to change one's words from insults to threats. MacNeal did not allege that Gordon chased her down the street. Nor did MacNeal allege that Gordon was moving ably or agilely while make the threats.

5

MacNeal's story may not have been likely, but it was not so incredible that the Court will subject the police to liability for believing the alleged victim. *Cf. Gerald M. v. J. Conneely*, 858 F.2d 378, 380-81 (7th Cir. 1988) (holding that police officer had probable cause to arrest the plaintiff based on the uncorroborated complaint of a 10-year-old child.). The Court finds that the police had probable cause to arrest Gordon. Accordingly, the defendants' motion for summary judgment with respect to Gordon's claim of false arrest is granted.

B.  *Equal Protection*

The Equal Protection clause of the *Fourteenth Amendment* grants all Americans "the right to be free from invidious discrimination in statutory classifications and other governmental activity," and 42 U.S.C. §1983 allows individuals to enforce this constitutional guarantee against state actors. *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996) quoting *Harris v. McRae*, 448 U.S. 297, 322, 65 L. Ed. 2d 784, 100 S. Ct. 2671 (1980). To establish an equal protection claim under §1983, a plaintiff must show that a state actor discriminated against her based on her membership in a protected class and did so with a "nefarious discriminatory purpose ..." *Id.* Gordon contends the arresting officers—both of whom are Caucasian—targeted her for arrest because she is African-American.

This case is at the summary judgment stage. Therefore, Gordon must go beyond the pleadings and present some factual support for her allegations. Accordingly, Gordon proffers the following evidence: (1) The Officers wrote in their Incident Report that Gordon told MacNeal: "Bitch, I will whoop your ass, you Hoe"; and (2) Sergeant Jones wrote that Gordon called MacNeal's children "hos." According to Gordon, "it is

6

improbable that a 59-year-old woman would call a child a ho." (Pl. Resp. Br. at 12). Gordon argues the police fabricated these statements and attributed them to her using "African-American street English" in order to cast her in negative light and justify her arrest. (*Id.*) Gordon's evidence is completely insufficient to withstand summary judgment and barely merits discussion.

Gordon admits that the police did not use racially insensitive language while she was being arrested. (Pl. Resp. Br. at 11) Nevertheless, Gordon claims she was "targeted" for arrest because she is African-American. Gordon is correct in arguing she was targeted for arrest. But, the reason she was targeted had nothing to do with her race. Gordon was arrested because another citizen—Nikisha MacNeal—called the police and said Gordon threatened her with a knife. Gordon has already admitted she yelled obscenities at MacNeal. In fact, at least one of MacNeal's children was present during the exchange. Gordon now claims she was using coarse language to describe MacNeal and not the children. Thus, Gordon argues that the Officers' incident report is evidence of racial bias. Even if the police misidentified the object of Gordon's outrage, the fact remains that Gordon was arrested because of an allegation she threatened MacNeal. Race does not appear to be an issue, and Gordon has presented no evidence to suggest otherwise. The defendants' motion for summary judgment with respect to Gordon's equal protection claim is granted.

C.   *Excessive Force*

The Fourth Amendment protects people from unreasonable searches and seizures. *U.S. Const. Amend. IV.* Therefore, allegations that the police used excessive force during an arrest are evaluated under the Fourth Amendment's reasonableness standard. *Graham*

7

*v. Connor*, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Given that reasonableness "is not capable of precise definition," courts look to the following factors in evaluating excessive force claims: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 394-95.

The gravamen of Gordon's claim is the police officers handcuffed her so viciously that they injured her wrists, and she needed surgery to repair the damage. Gordon testified the Officers handcuffed her "roughly and painfully" and "jacked her up by her shoulder and dragged her to the squad car." (Pl. Resp. Br. at 3). Gordon claims she repeatedly told the Officers that the handcuffs were hurting her, but they ignored her pleas. Gordon also testified the Officers forced her to squeeze into the squad car despite her protests that her age and double knee replacement surgery prevented her legs from being "bent into the back seat in the manner sought by [Officer] Christensen." (*Id.* at 4). After Gordon was processed and released from custody, she came home and showed her injuries to her neighbor, Catherine Robinson. Robinson took a picture of Gordon wrists and testified they were red, swollen and covered in abrasions. (Robinson Dep. at 56).

In response, the Officers claim the force used to arrest Gordon was minimal. To bolster their claim, the Officers point out that Gordon did not have wrist surgery until six or seven months after her arrest. Thus, the Officers argue either Gordon's injuries were

not that serious, or Gordon's surgery was for an injury she sustained after the arrest. Moreover, the Officers contend that even if they did use more force than normal, it was only because Gordon was resisting arrest. Both parties agree that the Seventh Circuit's ruling in *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 1987) should guide the Court's analysis.

In *Payne*, the plaintiff claimed the arresting officer "forced her arm behind her back, slammed the handcuff down on her wrist, jerked her wrist, and tightened the handcuffs until [she] could not feel her hands." *Id.* at 774-75. The plaintiff testified she told the officers she was in pain but was ignored. *Id.* at 775. After the plaintiff was released, she sought treatment in a local emergency room for swelling and bruising. *Id.* The plaintiff eventually had wrist surgery for injuries she claimed were related to the arrest. *Id.* Subsequently, the plaintiff brought an excessive force claim against the arresting officer. The officer argued the amount of force used was reasonable because the plaintiff disobeyed orders and resisted arrest. *Id.* at 775 n. 3. The plaintiff denied these allegations and insisted she complied with the officer's requests and did not threaten the officer. *Id.* The district court found the officer's version of events to be the most credible and determined that the plaintiff resisted arrest, yelled profanities at the officer and was being unruly. *Id.* at 778. On the basis of these factual determinations, the district court granted summary judgment and held that the officer's use of force was justified.

On appeal, the Seventh Circuit confirmed that excessively tight handcuffs can form the basis of an excessive force claim. *Id.* at 780.

> [It is] well established that it was unlawful to use excessively tight handcuffs and violently yank the arms of arrestees who were not resisting arrest, did not disobey orders of a police officer, did not pose a threat to the safety of the officer ... and

9

were suspected of committing only minor crimes.

*Id.* Next, the court noted that because the arresting officer moved for summary judgment, the facts had to be viewed in the light most favorable to the plaintiff. *Id.* at 778. Therefore, even though the plaintiff's version of events did not seem as plausible as the officer's story, the district court was prohibited from making credibility determinations and disregarding the plaintiff's testimony: "It is the job of the jury, and not the district court judge at summary judgment, to determine which party's evidence to credit." *Id.* The court explained there were two competing versions of events, and if the facts alleged by the plaintiff were found to be true, a reasonable jury could conclude that the arresting officer used excessive force during the arrest. *Id.* at 780. The district court's grant of summary judgment was reversed:

> [T]he district court erred by crediting [the officer's] version of events when considering the excessive force claim. The district court considered the reasonableness of the force used in light of the fact that [the plaintiff] had argued with and directed profanities against [the officer], refused to obey [the officer's] orders, agitated the crowd, and resisted arrest. But these are not facts viewed in the light most favorable to [the plaintiff]. [The Plaintiff], in fact denies each one.

*Id.* at 778.

Here, as in *Payne*, Gordon testified the police handcuffed her so brutally that she needed wrist surgery. Here, as in *Payne*, Gordon claims she did not resist arrest, heeded the Officer's orders and posed no threat to the Officer's safety. Here, as in *Payne*, if the Court is to grant summary judgment, it must do so by completely disregarding the plaintiff's testimony in favor of the arresting officers' version of events. But, Gordon's allegations are not so fantastical that the Court is willing to cast aside her testimony.

Before the Officers can be granted summary judgment, they must show there are no disputed issues of material fact regarding Gordon's arrest. Fed. R. Civ. P. 56(c). The

10

Officers contend that even if the handcuffs were applied in a rough manner, it is only because Gordon resisted arrest: "The defendants' actions were reasonable in light of [Gordon's] belligerent and argumentative tone toward the officers." (Defs. Mot. for Summary Judgment at 11). Gordon denies these claims, and Catherine Robinson—a witness to the arrest—substantiates Gordon's denials. Robinson's deposition testimony is as follows:

> Q. At any time did you see—and this is during the handcuffing process—form the beginning to when the cuffs are on [Gordon] ... Did you see [Gordon] twisting her body?
>
> A. No, I did not.
>
> Q. Did you see her pulling away as if in an attempt not to be handcuffed?
> A. No.
>
> Q. Did you see her moving her arms as if to suggest she was trying not to be handcuffed?
>
> A. I don't recall her moving her arms. I just recall her saying you can't put them cuffs on me that tight because I've got rheumatoid arthritis, but I did not see her pulling away from the officer...

(Robinson Dep. at 44). Gordon's affidavit and Robinson's eye-witness testimony demonstrate that the litigants disagree about the events surrounding the arrest. As a result, there is a factual dispute regarding whether Gordon resisted arrest and thus whether the Officers needed to use extra force to apply the handcuffs.

Next, the Officers contend the amount of force used must have been reasonable because Gordon did not "request medical assistance during the course of her arrest and processing." (Defs. Mot. for Summary Judgment at 10). The factual record, however, shows that this point is contested. Gordon testified she repeatedly told the Officers that her handcuffs were too tight and were hurting her wrists. This claim is corroborated by

11

Robinson who testified Gordon told the Officers she had rheumatoid arthritis and the handcuffs were painfully tight. (Robinson Dep. at 36). Once again, Gordon's testimony and the eye-witness testimony differ from the Officers' account of the arrest.

Both parties acknowledge that Gordon eventually had corrective wrist surgery. Each side, however, ascribes a different meaning to the *timing* of the operation. According to the Officers, the fact that Gordon did not have surgery until approximately seven months after the arrest proves she was not really injured or her injuries were trivial. The Court disagrees. In *O'Neill v. City of Chi. Police Officers*, the plaintiff sued the police for excessive force because his handcuffs were too tight and allegedly caused "red marks and bruising." 2002 U.S. Dist. LEXIS 18097, at *6 (N.D. Ill. Sept. 24, 2002). The plaintiff *never* sought medical treatment for his wrist injuries. *Id.* Nevertheless, the court denied the arresting officer's motion for summary judgment because there was a "factual dispute as to whether the plaintiffs ... resisted arrest;" the plaintiff's failure to seek medical attention did not bar his excessive force claim. *Id.* at *21.

Similarly, Gordon's delay in seeking medical treatment does not mean she fabricated her injuries. There are many reasons why a legitimately injured person may postpone an operation. Perhaps the individual lacks health insurance, and the surgery is expensive. Perhaps the individual wanted to see a specific specialist and had to work around the doctor's schedule. Or maybe the individual is afraid of "going under the knife" and hoped the injuries would heal on their own. If Gordon alleged she suffered life-threatening injuries, but then waited months to see a doctor, the Court would be highly skeptical. But, that is not the case. Gordon claims her wrist surgery addressed injuries she sustained while being handcuffed. The Officers disagree and assert Gordon's

12

wrist problems were unrelated to her arrest. The Officers, however, have not produced testimony from Gordon's treating physician, or any physician, expressing this view. Gordon's decision to delay surgery does not refute her claim that the arresting officers used more force than was reasonably necessary to effectuate the arrest.

The Officers also claim that Gordon's decision to delay surgery shows her injuries were minor, and therefore, can not support a claim of excessive force. This argument was considered and rejected by the Seventh Circuit in *Holmes*:

> The fact that the [plaintiff] was not bleeding, did not require stitches, did not require follow-up treatment for most of his injuries and could not recall whether he obtained the pain medication he was prescribed does not rule out the possibility that [the police] employed force that was not reasonably necessary to secure [the plaintiff]. A factfinder might conclude that [the plaintiff's] injuries were *slight* but nonetheless find that the [the police] employed more force than was justified.

*Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 687, (7th Cir. 2007) (emphasis added) (denying police officer's motion for summary judgment on the plaintiff's excessive force claim because there were issues of fact regarding whether the plaintiff resisted arrest). Under *Holmes*, injuries need not be severe or life-threatening in order to support a claim of excessive force. To be sure, handcuffs are not designed to be comfortable, and any arrest will necessarily cause some pain and irritation. The *Fourth Amendment*, however, prohibits police from handcuffing a cooperative suspect so violently that she needs to have wrist surgery. *See, e.g., Brucato v. Dahl*, 2006 U.S. Dist. LEXIS 9821, at *11 (N.D. Ill. Mar. 10, 2006) (denying summary judgment where plaintiff presented evidence that her wrists were injured as a result of forceful handcuffing by the police.).

13

Finally, the Officers claim that even if they did use above average force, it was justified because Gordon was accused of a serious crime. The Court is keenly aware that officer safety must be at the forefront of each encounter with a suspect. Here, the suspect was a 59-year-old woman who walks with a cane and told the Officers she had rheumatoid arthritis and double knee replacement surgery. At the time of her arrest, the Officers had already opened Gordon's waist-pack and knew she possessed no weapons. Moreover, there were three armed police officers on the scene. Given the facts known to the police, a reasonable jury could conclude that despite the allegations against Gordon, she posed no threat to the personal safety of the Officers, and thus, no extra force was necessary.[3]

At the summary judgment stage, courts must view the facts in the light most favorable to the plaintiff. Thus, the Court must accept as true that Gordon did not resist arrest, complied with the Officers commands, but was still handcuffed so brutally that she needed to have corrective wrist surgery. The Officers' version of events—extra force was necessary because Gordon was uncooperative, refused to be handcuffed and hurled profanities at the police—is equally plausible. This factual dispute, however, is one for the jury to decide. Accordingly, summary judgment with respect to Gordon's excessive force claim is denied.

### IV. Conclusion

---

[3] The Officers also assert they are entitled to qualified immunity. But, because there is a factual dispute regarding the parties' conduct during the arrest, the defense of qualified immunity is not applicable: When "the facts are in hot dispute, the officers cannot seek pretrial refuge behind a claim of qualified immunity... Raising a defense of qualified immunity in the face of disputed facts that control the answer to the [Fourth Amendment] question is a waste of everybody's time" *DuFour-Dowell v. Cogger*, 152 F.3d 678, 678 (7th Cir. 1998).

14

For the reasons set forth in the preceding analysis, the motion for summary judgment with respect to Gordon's claim of false arrest and violation of the Fourteenth Amendment is GRANTED. The motion for summary judgment with respect to the excessive force claim is DENIED.

IT IS SO ORDERED.

11/12/08
Dated

Wm. J. Hibbler
The Honorable William J. Hibbler
United States District Court